IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00034-LTB

GEORGE MOORE,

      Plaintiff,

v.

ELIAS DIGGINS, Acting Sheriff of the Denver Sheriff Department;
RN ZIMMER, Intake RN;
DR. CHRISTIAN STOB; Denver Health Medical Center Doctor;
CARMEN KASSETY; Denver Health Medical Center Supervisor;
DENVER HEALTH MEDICAL CENTER; and the
DENVER SHERIFF DEPARTMENT,

      Defendants.

---

## ORDER TO DISMISS

---

      Plaintiff, George Moore, is an inmate currently incarcerated at the Denver County Jail (DCJ). Acting *pro se*, he initiated this action by filing a Prisoner Complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131, *et seq.*, and a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915. Plaintiff is challenging the conditions of his confinement while he was detained at the DCJ.

      On January 7, 2015, Magistrate Judge Gordon P. Gallagher granted the § 1915 Motion and, on January 13, 2015, directed Plaintiff to amend the Complaint. Plaintiff filed an Amended Complaint on February 11, 2015. (ECF No. 7).

1.    <u>Applicable Legal Principles</u>

      In the Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of

prisoner claims.

Specifically, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*, without prepayment of costs.  Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

In addition, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint.  28 U.S.C. § 1915A(b).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e.  In this regard, the PLRA amended section 1997e(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."  *See* 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 4). Thus his allegations must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B).  Moreover, his Complaint concerns prison conditions and at least some Defendants appear to be employees of a governmental entity.  Thus, his Complaint must be reviewed under the authority set forth above.

2

*See Young v. Davis,* 554 F.3d 1254, 1256 (10th Cir. 2009) ("Because Mr. Blaurock is a prisoner suing government officials, the court is required by federal statute to screen his First Amended Complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.").

In reviewing complaints under these statutory provisions, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic Corp.*, 550 U.S. at 555. Moreover, a legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). *See Conkleton v. Raemisch*, Civil No. No. 14–1271, ___ Fed. App'x ___, 2015 WL 794901 (10th Cir. Feb. 26, 2015) (upholding in part District Court's dismissal as frivolous of prisoner civil rights complaint); *Ross v. Romero*, 191 Fed. App'x 682 (10th Cir. 2006) (affirming district court's *sua sponte* dismissal of prisoner's civil rights complaint under 28 U.S.C. § 1915(b).

The Court must construe the Amended Complaint liberally because Plaintiff is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If a complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity

with pleading requirements." *Hall*, 935 F.2d at 1110.  However, a court should not act as a *pro se* litigant's advocate.  *See id.*

2.  Plaintiff's Factual Allegations

Plaintiff's alleges that on October 9, 2014, he was arrested and brought to Intake at the DCJ. As he was waiting to be booked in, he told a deputy that he had been arrested without his cane and that he was having trouble and experiencing pain when getting up and down and moving around without it.  The deputy told him to tell the medical department about his concerns.  When Plaintiff was seen by the medical intake department, he told the intake nurse, RN Zimmer, that he was in pain and was supposed to have a cane or a walker.  Nurse Zimmer told Plaintiff that he needed to make this request "upstairs," on the unit floor where he would be housed.  When Plaintiff requested to speak with her supervisor, she told Plaintiff that he would tell him the same thing and to deal with it when he got upstairs.

At approximately 7:30 P.M., Plaintiff was moved upstairs to the second floor in Unit F.  At that time, he spoke to the Pod deputy about contacting the medical department to get a cane/walker because of the pain he was experiencing in moving around due to his bad hip.  Plaintiff was told that the medical department was closed but that he should put in a request slip.  The next day, Plaintiff was called to the medical department where he was seen by Defendant Dr. Stob.  Dr. Stob verified Plaintiff's medical complaint but told Plaintiff that he did not have either a cane or a walker at that moment.  On that same day, Plaintiff collapsed in his cell when his left hip gave out causing pain to his hip, groin and lower back.  Plaintiff received a walker three hours later.

Although listed as seven separate claims against the various defendants in the Amended Complaint, Plaintiff asserts two causes of action in the present action.  Specifically, he asserts liability pursuant to the Civil Rights Act, 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA).  For the reasons stated below, the Amended Complaint and the action will

be dismissed pursuant to screening authority set forth above.  The pertinent grounds which will result in the dismissal of all claims against all Defendants are addressed below.

3.   Liability under 42 U.S.C. § 1983

Plaintiff first seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986).  In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (internal quotations and citations omitted).  The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right.  *Id.*

Claims of denial of medical treatment by pretrial detainees are evaluated under the Due Process Clauses of the Fifth and Fourteenth Amendments, which prohibit the defendants from undertaking acts that amount to punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  In order to determine whether the challenged conditions of pre-trial confinement amount to punishment:

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose ... and whether it appears excessive in relation to [that] purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.

*Id.* at 538–39 (citations, brackets and internal quotations omitted).

5

The law is clear that a pretrial detainee is entitled to the same degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In this regard, the Eighth Amendment protects convicted prisoners against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. Specifically, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Famer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To state an Eighth Amendment violation in the context of medical treatment, an inmate must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. *Gamble v. Estelle*, 439 U.S. 97 (1978). The first showing requires the court *objectively* to determine whether the medical need was "sufficiently serious." "[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.' " *Martinez*, 563 F.3d at 1088 (quoting *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation omitted).

The second prong requires the court *subjectively* to determine whether the officials acted with a sufficiently culpable state of mind. Noting that this subjective standard lies "somewhere between the poles of negligence at the one end and purpose or knowledge at the other," *id*. at 836, the Supreme Court clarified the appropriate standard as follows.

6

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id*. at 837–38.

Where the plaintiff's deliberate-indifference claim is premised on a delay in medical care, such delay "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)) (internal quotation marks omitted). This substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Even assuming Plaintiff had a serious medical need, Plaintiff's allegations fall far short of establishing deliberate indifference—*i.e.*, that any Defendant acted with a sufficiently culpable state of mind. To establish the subjective component, a plaintiff must show that jail officials "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 837. Specifically, a jail official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?' " *Martinez*, 563 F.3d at 1089 (quoting *Mata*, 427 F.3d at 753.

Initially, the Court notes that Plaintiff was arrested without his cane or walker. Therefore, presumably, he was able to manage without such device at least temporarily as he makes no

7

allegation that arresting officers or jail officials took his cane or walker.  As such, RN Zimmer had no reason to believe that he faced a substantial risk if he was not immediately provided with a walking assistance device.  More importantly, no-one at the DCJ denied him a cane or walker; he simply was told to seek such device on the Unit Floor when he was housed.  Because he was arrested at night, the medical department on his floor apparently was not open at that time for non-emergencies.  He immediately was approved for a walking device the following day but there were none available at that time.  He received a walker later that same day when one became available.

These allegations simply do not show that any Defendant acted with deliberate indifference. Deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment.  Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation.  The Supreme Court explained the difference between negligence and constitutional claims in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck.  He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell.  He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor.  The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant.  Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses.  Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work.  During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication.  Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3–month period .... They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Gamble*, 429 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in *Gamble*, Plaintiff at bar has failed to demonstrate that he suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Plaintiff's own allegations indicate that he received a walker the day after he was arrested and taken into custody at the DCJ. Moreover, he was not given one immediately because there wasn't one available; no Defendant refused his request. These allegations simp[ly do not rise to a constitutional violation.

While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Constitution does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981).

In sum, there is no allegation that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it or that he had any reason to know that he faced any substantial harm. Accordingly, Plaintiff's section 1983 deliberate indifference/medical treatment claims will be dismissed. *Cf. Shue v. Laramie County Detention Center,* Civil No. 13–8064, 2014 WL 6807739, 4 (10th Cir. Dec. 4, 2014) (county officials were not deliberately indifferent to pretrial detainee's serious medical needs even if they delayed getting detainee medical treatment for leg injury following a slip and fall accident).

5.   Americans with Disabilities Act

Plaintiff's second claim is that Defendants violated Title II of the Americans with Disabilities Act ("ADA"), as amended 42 U.S.C. § 12131, et seq. Title II of the ADA prohibits discrimination by public entities, such as state and local prisons. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Specifically, Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded form participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Pursuant to this standard, Plaintiff must show that:  1) he is a qualified individual; 2) with a disability; and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; 4) by reason of his disability. 42 U.S.C. § 12132.

Assuming that Plaintiff is a qualified individual with a disability under the ADA, he does not allege that he was excluded from any service, program, or activity on the basis of his disability. In actuality, this claim is premised on Plaintiff's disagreement with the medical judgment of the medical professionals charged with his care. This, however, fails to state a claim under the ADA.

*See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions ... do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); *Rashad v. Doughty*, 4 Fed. App'x 558 (10th Cir. 2001) (holding that "the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation); *Moore v. Prison Health Services, Inc.*, 201 F.3d 448 (10th Cir. 1999) (finding that the ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general cause of action for challenging the medical treatment of their underlying disabilities). *Accord Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions are not a basis for ADA claims); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners ... [t]he ADA does not create a remedy for medical malpractice."); *Lesley v. Chie*, 250 F.3d 47, 55 (1st Cir. 2001) ("[A] plaintiff's showing of medical unreasonableness must be framed within some larger theory of disability discrimination."); *Thomas v. Pa. Dep't of Corr.*, 615 F.Supp.2d 411, 429 (W.D. Pa. 2009) (plaintiff's requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA).

The Court finds that Plaintiff's allegations fail to state a claim against any named Defendant for a violation of the ADA. Therefore, his ADA claim will be dismissed as well.

Accordingly, it is

**ORDERED** that the Complaint and this action are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A and/or 42 U.S.C.A. § 1997e. It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of

appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

      DATED at Denver, Colorado, this __23rd__ day of __March__, 2015

                                        BY THE COURT:

                                        s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, Senior Judge
                                        United States District Court