# IN THE UNITED STATES DISTRICT COURT
## FOR  THE DISTRICT OF COLORADO

Civil Action No.15-cv-00034-MSK-MEH

**GEORGE MOORE,**

Plaintiff,

v.

NANCEY ZIMMER, RN, in her individual and official capacities,
DR. CHRISTIAN STOB, in his individual and official capacities,

Defendant.

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**SEP 29 2016**

JEFFREY P. COLWELL
CLERK

---

## SWORN AFFIDAVIT and DECLARATION OF GEORGE MOORE

Plaintiff George Moore, hereby declares:

Plaintiff George Moore, herein after, Plaintiff will show this Court that there is a genuine issue of material fact to overcome Defendants Motion for Summary Judgment against Plaintiff. Plaintiff will show that Defendants RN, Nancey Zimmer and Dr. Christian Stob were Deliberately Indifferent and reckless towards Plaintiff's medical needs and violated Plaintiffs 8th Amendment right to be free from cruel and unusual punishment and Plaintiff's 14th Amendment due process.

The Defendants conduct is in reckless disregard of the safety of another if he/she does an act or intentionally fails to do an act which it is his/her duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his/her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his/her conduct negligent.

Recklessness may consist of either of two different types of conduct. In one, the actor knows, or has reason to know, as that term is defined in § 12, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other, the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a

reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.

Plaintiff will show through Defendant's Interrogatories, and Admissions as well as through the Medical Charts, that they were deliberately indifferent towards Plaintiff's serious medical need also in violation of the 8th and 14th Amendment. Plaintiff will show through Defendant's Interrogatories and Admissions as well as the Plaintiff's medical records from DHMC, that these Defendant's knew of Plaintiff's serious medical need and deprived Plaintiff of a basic human need or exposed Plaintiff to serious harm and did not respond reasonably or at all to meet the subjective requirement of Deliberate Indifference. Plaintiff was harmed based on the fact that he was forced to suffer the unnecessary and wanton infliction of pain at the hands of both Defendants.

Under the objective part of the test, Plaintiff will show that his medical condition could seriously affect his health and safety. Plaintiff will show that the actions and/or inaction's of the Defendant's injured Plaintiff physically and psychologically. Plaintiff was injured psychologically based on the depression he encountered from the tremendous pain he suffers with that leads to less sleep, eating, ability to exercise and the fact that he has to continuously deal with the embarrassment and harassment of having other inmates help him put his left sock and shoe on. See, **Denver Health/Denver Sheriff Department Facilities Mental Health Progress Note (Jail_0080, 0108 and Jail_0113),** which shows plaintiff's Therapist meetings with Psych Intern Whitney Wozniak, BA, in how this pain affects his depression and self esteem and other areas of plaintiff's life..

### DR. CHRISTIAN STOB

1). Interrogatory #10: Do the inmates you meet with during the medical purposes at the Downtown detention Center have control over what you write in their medical charts and/or file.

**RESPONSE:** No, but the medical chart typically contains information regarding signs and

symptoms obtained from my observations of the plaintiff, his or her self-reports, and sometimes the reports of others. This is the common place method of medical charting used across different institutions and practices, regardless of whether Dr. Stob is involved or not.

Dr. Stob states that this is the commonplace method of medical charting used across different institutions and practices, regardless of whether Dr. Stob is involved or not. Plaintiff's medical file dated August 27, 2014(DH_0074 – DH_0075),(Exhibit A) is very detailed to include **Date Of Service, Primary Care Physician, Chief Complaint, History of Present Illness, Past Medical History, Past Surgical History, Medications, Allergies, Family History, Social History, Review of Systems, Physical Examination, X-Rays, Assessment, and Plan**. This shows that Dr. Stob's Practice and Custom is not the commonplace method of medical charting used across different institutions and practices.

The Plaintiff does not have authority of what is written in his file by Dr. Stob or "any" doctor. With this admission from Dr. Stob, the fact of the matter is that Dr. Stob can't prove beyond a reasonable doubt, that Plaintiff did not report being in tremendous pain without a walking device.

As will be shown throughout this Sworn Affidavit and Declaration, Defendant's actions will show how Defendant was deliberate indifferent towards Plaintiff's serious medical need and that Defendant was aware of Plaintiff's serious medical need and of Plaintiff's chronic hip pain and substantial pain and that the Defendant failed to respond and/or delayed Plaintiff receiving adequate medical treatment, leaving Plaintiff to suffer the unnecessary and wanton infliction of pain and was deliberately indifferent to those actions causing Plaintiff's physical and psychological injuries of depression. The physical injury was that plaintiff's hip gave out causing him to fall and cause further injury to his left hip, groin and lower back, leaving Plaintiff since that fall, he can no longer put his left sock and shoe on, or tie the laces, as Plaintiff used to be able to do that even though it was difficult. Under the Eighth Amendment, Plaintiff is entitled to medical care for serious medical needs. **Estelle v. Gamble,** 429 U.S. 97 (1976).

**2).**    Interrogatory #11: Have you ever not put all of an inmates medical and/or mental health issues in his/her file/chart?

**RESPONSE:** Yes, and the common reasons for that are that Dr. Stob does not typically handle mental health care in his practice, sometimes the information is already included in another part of the chart or in a different chart, and sometimes Dr. Stob is not aware of a medical issue for some reason.

If Defendant decides not to put all of an inmates medical and/or mental health issues in their charts, Defendant can't reference the medical chart and state if an inmate complained about any issue, including the Plaintiff. This is a custom created by Defendant and he can't state what Plaintiff told him since he can't remember what was said without referencing the medical chart and the fact that he don't add all of the inmates information to include Plaintiff, this medical chart is irrelevant due to the fact that it is incomplete by Defendant's own admission.

**3).**    Interrogatory #12: Have you ever made any mistakes when it comes to medical information you may of added or not added to any inmates medical file/chart?

**RESPONSE:** Yes, Dr. Stob has likely made a mistake regarding medical information added or not added to an inmates medical chart during his career.

Defendants admissions to these interrogatories shows that he is not capable of stating that Plaintiff did or did not state a claim of a serious medical need in which he can further injure himself if action was delayed and plaintiff did injure himself. With the Defendant admission of making mistakes in regards to what he may add or not added, Defendant cannot state with all assurance that Plaintiff never told him that he is in tremendous pain moving about the facility without a cane or walker and Plaintiff was disabled.

**4).**    Interrogatory #16: Have you ever misdiagnosed an inmates condition?

**RESPONSE:** Objection. The term "misdiagnosed" is vague and potentially misleading/ Without waiving any objection, it is common practice in medicine to work with multiple,

alternative diagnoses, one or more of which may not ultimately be confirmed, but such methods are
not properly categorized as " misdiagnoses." To my knowledge, I have not incorrectly diagnosed
an inmates condition.

When Defendant stated in this interrogatory, "**to my knowledge**" that shows that it was
possible that he could have incorrectly diagnosed an inmates condition, but he is not 100% sure.

5).     Interrogatory #17: Did the Plaintiff ever tell you that he is disabled, in tremendous pain, and
in need of a cane and/or walker on October 10, 2014.

**RESPONSE:** Based on the chart, when Dr. Stob saw Plaintiff on October 10, 2014, he
reported chronic hip pain, he reported having been seen by an Orthopedist during 8/2014, and he
asked for a cane or walker, which was ordered for him.

Once again, Defendant references the medical chart, in which he already admitted of not
putting all of an inmates information in and that he has likely made a mistake regarding
information added or not added to an inmates chart in his response to Interrogatory #11. Also, since
the inmates such as Plaintiff are not allowed to see what is being put in their file at that time, he has
no clue as to what is being added or not added, and if this is Defendant's custom of not adding all
an inmates information in their chart, Defendant can't reference the medical chart in his responses
due to the fact that it is not accurate and it is incomplete. With that fact being confirmed by the
Defendant, he can't honestly say one way or the other as to Plaintiff stating to him that he is
disabled, and in tremendous pain.

6).     Interrogatory #23: Did you tell plaintiff that you didn't have a cane or walker and that you
wouldn't contact another medical department to obtain either?

     **RESPONSE:** No.

Throughout the Interrogatories, Defendant had to reference Plaintiff's medical chart to
answer Interrogatories pertaining to what Plaintiff reported or didn't report. However, on this
Interrogatory, Defendant can answer it without referencing the medical chart. If he can't remember

other information without going to the medical chart, even to the fact that he has admitted he likely

made a mistake regarding information added or not added to an inmates medical chart how can he

answer this one with certainty? If Defendant can't remember what he placed in a inmate chart, how

can he remember if he didn't tell Plaintiff  he wouldn't contact another medical department to

obtain a cane or walker?

7).     Admission #2: Admit that you verified Plaintiff's medical diagnoses on October 10, 2014.

**RESPONSE:** Based on medical chart, Dr. Stob admits he evaluated Plaintiff's signs and

symptoms on October 10, 2014, and reviewed certain of Plaintiff's medical records.

Defendant does not clearly admit or deny verifying Plaintiff's medical diagnoses on this

admission. However, defendant does admit that he did view Plaintiff's DHMC Outpatient

Encounter Record from the Orthopedic Clinic Dated 8/27/14,(Exhibit A), which details Plaintiff's

serious medical need and the mandated treatment for left hip degenerative joint disease, also known

as Osteoarthritis.

8).     Admission #4: Admit that Plaintiff told you he is disabled, had stability issues, and in

tremendous pain.

**RESPONSE:** Dr. Stob admits Plaintiff reported chronic hip pain, that he had seen an

Orthopedist during 8/2014, and he requested a cane or walker, which was provided. Based on the

medical chart, the remainder of the request is denied.

Dr. Stob based his response off of Plaintiff's medical chart that Dr. Stob completed himself.

Dr. Stob has stated repeatedly, that he don't put all of an inmates information in the medical chart

and that inmates have no control over what information should or should not be added and that he

has made mistakes as to what may or may not have been added. Thus Dr. Stob can't state with

certainty, that Plaintiff told Dr. Stob much of anything. And when Plaintiff requested a cane or

walker, one was not readily provided to Plaintiff that day as he states in his response. He states that

he Ordered a walker for the Plaintiff. See, **Interrogatories #10 and #11**. Thus, based on these

facts, Dr. Stob cannot state without question, that Plaintiff didn't tell him he is disabled, had

stability issues and in tremendous pain. Also, Dr. Stob's actions of scheduling Plaintiff to see a

orthopedist is evidence that Plaintiff reported his disability, stability issues and tremendous pain,

and reviewed DHMC Outpatient Encounter  Record from the Orthopedic Clinic Dated 8/27/14,

unless Dr. Stob just makes such recommendations just off what inmates tell him without Dr. Stob

verifying said medical issues, and pain medication prescribed, which one would think that action

would be against policy and law.

9).     Admission #5: Admit that Plaintiff told you he needed a cane and/or a walker to get around

due to his disability.

**RESPONSE:** Based on the medical chart, Dr. Stob admits Plaintiff requested a cane or

walker, and Dr. Stob Ordered that one be provided.

Once again, Dr. Stob has to reference a medical chart that is not complete nor reliable to be

basing a response to. Dr. Stob stated that he ordered Plaintiff a cane or walker. It is uncertain if that

order was based off adequate medical information in the chart or did he placed said order based off

Plaintiff stating he needed a cane or walker. If Dr. Stob based that order off of verified information,

that is enough to show that Dr. Stob was deliberately indifferent to plaintiff's serious medical need

and deliberately delayed medical treatment and caused the infliction of  unnecessary and wanton

infliction of pain, in violation of the 8th Amendment of the U.S. Constitution and deprived Plaintiff

of the basic human needs of life necessities in violation of the Fourteenth Amendment.

10).     Admission #6: Admit that you told Plaintiff you didn't have a cane and/or walker at that

time, and you wouldn't contact another medical department to get one.

**RESPONSE:** Based on the medical chart, denied.

Dr. Stob continues to go back to this inadequate medical chart that he created and may of

added or not added information. Dr. Stob cannot state without a doubt, that he didn't tell Plaintiff

this. Plaintiff's medical chart is inaccurate for Dr. Stob to base a decision on as for what Plaintiff

informed him of. The fact that Dr. Stob has openly admitted to not putting all of an inmates

medical issues and diagnoses in their medical chart, this is Dr. Stob's personal practice and/or

custom, thus, these denials by Dr. Stob to these Interrogatories and Admissions prove nothing

against Plaintiff.

**11).**    Admission #7: Admit that Plaintiff filed a grievance on you for refusing to deal with his

medical issues appropriately on October 10, 2014.

    **RESPONSE:** Based on the available records, while Plaintiff did complete two inmate

grievance Forms, 14-12837(10/9/14) and 14-12834(10/11/14), neither of them indicate Dr. Stob

refused to deal with Plaintiff's medical issues appropriately, and in fact, Dr. Stob dealt with

Plaintiff's medical issues in a reasonable and appropriate manner.

    Plaintiff filed Grievance 14-12834 on 10/11/14,(Exhibit B), in which Plaintiff stated in part:

"Seen Dr. Stob on 10/10/14, and he verified that I'm supposed to have a cane or walker, but as of

10/11/14, 0900, I still don't have either."

    Dr. Stob did not deal with plaintiff's medical issues in an reasonable and appropriate

manner based on Dr. Stob's admission of Plaintiff reported chronic hip pain in Interrogatory #7 and

Admission #4, and Dr. Stob did nothing to deal with plaintiff's chronic hip pain, leaving Plaintiff to

endure the unnecessary and wanton infliction of pain, and placed Plaintiff in jeopardy of falling

and further injure himself, which is what happened to Plaintiff on October 11, 2014. Dr. Stob's

failure to act to protect Plaintiff's Liberty Interest against harms and safety despite the fact that

Plaintiff told him that he was in tremendous pain moving about the facility without a cane or

walker and Dr. Stob did nothing but delayed Plaintiff's treatment and forced Plaintiff to endure the

unnecessary and wanton infliction of pain as well as chronic and substantial pain. **McElligott V.**

**Foley**, 182 F.3d 1248, 1256-57(11th Cir.1999). (holding, failure to inquire further into, and treat

Plaintiff's severe pain, finding of taking an "easier but less efficacious course of treatment). This is

proof that Dr. Stob knew of Plaintiff's serious medical condition and did not respond to Plaintiff's

serious medical need in a reasonable manner and that led to Dr. Stob being deliberate indifferent to

Plaintiff's serious medical need and choosing an "easier and less efficacious course of treatment" to

be consciously chosen by the Defendant cannot be completely foreclosed. The fact that Dr. Stob

placed an Order for a cane or walker, also shows that he was aware of Plaintiff's serious medical

need through his admission of reviewing Plaintiff's medical chart of August 27, 2014 which clearly

states that Plaintiff has, **"Severe Degenerative Joint Disease" and chronic pain, and need for a**

**cane or walker in the right hand and a left total hip arthroplasty,"** that Plaintiff's medical

condition was diagnosed by a physician mandating treatment, and Dr. Stob chose recklessly to

disregard his gatekeepers role towards Plaintiff's serious medical need and the unnecessary and

wanton infliction of pain and Plaintiff's safety of moving about the facility without a cane or walker

for stability issues. Dr. Stob also was aware of the harm that could befall the Plaintiff by delaying

Plaintiff's treatment to provide Plaintiff with a cane or walker, which is the fact that Plaintiff could

fall and injure himself, as Dr. Stob admits openly in his Admission #11: **"Admit that if Plaintiff**

**was not given a cane or walker, that he could fall and further injure himself." RESPONSE:**

Admit and Plaintiff could fall and injure himself regardless of whether he had a cane or walker. Dr.

Stob also admits in Admission #12, **"that arthritis can significantly affect an individual's daily**

**activities of walking, bending and other activities of daily living"**. These actions and admissions

from Dr. Stob continues to show his awareness to Plaintiff's medical condition, medical needs and

treatment as well as Dr. Stob's refusal to treat and/or delayed Plaintiff's medical needs and/or

treatment. In <u>**Taylor v. Plousis**</u>, 101 F. Supp. 2D 255,262(D.N.J.2000) ("a medical condition

which threatens a Plaintiff's ability to walk, even on a non-permanent basis, falls within the ambit

of a serious medical need").See, e.g., <u>**Kaufmann v. Carter**</u>, 952 F. Supp. 520, 527 (w.d.

Mich.1996)("A medical condition that threatens one's ability to walk, even if ultimately reversible,

is unquestionably a serious matter.); <u>**Johnson v. Hardin County**</u>, 908 F.2d 1280,1283-84(6th Cir.

1990)(holding that Defendant's refusal to provide inmate crutches supported a claim of Deliberate

Indifference).

**12).**    Admissions #11: Admit that if Plaintiff was not given a cane or walker, that he could fall and further injure himself.

**RESPONSE:** Admit and Plaintiff could fall and injure himself regardless of whether he had a cane or walker.

Dr. Stob continues to show through his actions, that he was aware of the fact that Plaintiff had a serious medical need, his safety was in jeopardy without a walking aid, and Plaintiff was forced to suffer the unnecessary and wanton infliction of pain as well as his chronic and substantial pain, based on the fact that Dr. Stob refused to deal with Plaintiff's serious medical need and delayed treatment and Dr. Stob refused and failed to fulfill his gatekeeper's role, as established by the S. Ct. in **Estelle v. Gamble**, 429 U.S. 97, 104-105, 50 L. Ed 2d 251, 97 S. Ct. 285(1976). In **Westlake v. Lucas**, 537 F.2d 857 (6th Cir.1976) The Sixth Circuit agreed with the Ninth Circuit, when it held "that a prisoner who is needlessly [**10] allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." Plaintiff was allowed to suffer unnecessary pain when relief was readily available from Dr. Stob by obtaining a cane or walker for the Plaintiff.

**13).**    Admission #13: Admit that if a medical Personnel refuses to deal with a Patients medical issues in accordance to law, they can be held accountable for that refusal and that medical issue will not be dealt with due to his/her incarceration.

**RESPONSE:** Dr. Stob admits that if a medical provider refuses to deal with an inmates serious medical need, that medical provider can be held accountable under the law under certain circumstances that do not apply to this case. Dr. Stob denies the remainder of the request because one medical provider's refusal to deal with an inmates medical need will not necessarily lead to the need going unaddressed, as other individuals or the patient himself may be able to address the need.

The Court in **Hare v. City of Corinth**, 74 F.3d 633, states in part; "whether the State's obligation is cast in terms of a duty to provide medical care or protection from harm, its ultimate

**Constitutional duty** is to "to assume some responsibility for [the] safety and general well being" of persons whose State occasioned confinement renders them unable to fend for themselves." ·

Dr. Stob stated that "the patient himself may be able to address the need." It is ludicrous for Dr. Stob to state that a incarcerated inmate can obtain a cane or walker or any type of medical care himself, when they are the one's responsible for providing medical care and treatment to the inmate population. **DeShaney**, 489 U.S. At 200, Court ruled in part; "The underlying purpose of requiring a State jail official to provide medical care to a pretrial detainee is to prevent the detainee from suffering further physical harm. The State's responsibility... springs from the _fact_ of incarceration and the resulting obligation to provide for the detainee's basic human needs, which include adequate medical care. (explaining that State's affirmative restraint of individual's liberty gives rise to duty to provide for his "basic human needs," "including" medical care and reasonable safety).

14).    Admission #14: Admit that osteoarthritis is a serious medical need mandating treatment by a Physician.

**RESPONSE:** Dr. Stob admits that Osteoarthritis can lead to a serious medical need, depending on the circumstances.

This response to this admission proves that Dr. Stob knew that if a individual had been diagnosed with severe osteoarthritis and needs surgery to treat it, such as Plaintiff, Dr. Stob knew that his failure to treat Plaintiff's serious medical need forced Plaintiff to endure the unnecessary and wanton infliction of pain as well as Plaintiff's chronic hip pain and placed Plaintiff's safety in harm and Plaintiff did in fact harm himself physically by falling, injuring his left hip, groin and lower back and suffered psychological depression by asking other inmates to help him put his left sock and shoe on, causing Plaintiff embarrassment. Dr. Stob admits repeatedly that Plaintiff reported chronic hip pain and chronic pain and that he reviewed Plaintiff's medical records from DHMC which list Plaintiff's serious medical need and treatment plan dated 8/27/14.

15).    Admission #15: Admit that once a medical personnel is made aware of an individual's serious medical need, they can not ignore or disregard said condition.

**RESPONSE:** Dr. Stob admits that a medical provider typically should not ignore or disregard an inmates serious medical need.

This shows that Dr. Stob was aware of the law in regards of not attending to Plaintiff's serious medical need and he admitted to reviewing Plaintiff's medical file of August 27, 2014, which states Plaintiff's serious medical need of Osteoarthritis in his left hip, and chronic hip pain.

In **Spruill** supra, Deliberate Indifference is met when a doctor is "intentionally inflicting pain on a prisoner." By Dr. Stob refusal to treat Plaintiff's serious medical condition and Dr. Stob's action of delaying treatment for Plaintiff's serious medical need, was a violation of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments of the U.S. Constitution and intentionally inflicting pain on Plaintiff. Such claims are tested by a "2 Pronged standard" that requires proper allegations of "serious medical needs" and Deliberate Indifference on the part of prison officials towards those needs. Deliberate indifference, the first essential objective part of the Prong, the Court will look at whether the condition you are challenging could seriously affect your health or safety. In considering a condition, a Court will think about how bad it is and how long it has lasted. The second essential element, is properly pleaded by allegations of "intentional efforts on the part of [Prison Official] to delay [Plaintiff's] access to medical care at a time when [] he was in extreme pain [,] and has made his medical problems known" to the attendant Prison personnel [,] of "complete denial" of medical treatment, or of a reckless or callous indifference to the... safety of...Prisoners".

16).    Admission #16: Admit that an individual's hip can give out causing him/her to fall that has arthritis in the hips and/or knees.

**RESPONSE:** Admit.

Once again, Plaintiff has shown that Dr. Stob was well aware of the harm that could befall Plaintiff.

17).    Admission #21: Admit that Plaintiff's past crack use has no relationship to this case.

**RESPONSE:** Deny.

Defendant's Counsel asserts that Plaintiff never told doctors about his past crack use. At

Plaintiff's Outpatient Visit to DHMC on 7/14/2014, located in "**Assessment and Plan:**" it states in

part; "He has a history of recent cocain use by his own admission." (DH_0109). (See Exhibit C)

Based on Dr. Stob's Interrogatories and Admissions listed above, there are "genuine issues

as to material facts that are in dispute. Dr. Stob has admitted and stated continuously that Plaintiff

complained of chronic hip pain and chronic pain. Dr. Stob also admits that he seen through

reviewing Plaintiff's medical chart, that Plaintiff had a serious medical need mandating treatment

by a Physician, which shows Plaintiff has Severe Osteoarthritis in the left hip, and that Dr. Eric

Hammerberg mandated treatment by way of ordering a left total hip arthroplasty as of 8/27/2014.

Dr. Stob makes reference to DHMC Dr. Hammerberg's records on Plaintiff throughout his

Interrogatories and admissions when Dr. Stob verified through "Electronic Medical Records"

(EMR) Data, based at DHMC, that plaintiff used a cane and/or walker. There is also a genuine

issue of material fact as to why Dr. Stob objects in some instances to the word(s) "verify, verified,

and verifying" in Interrogatories #13 and 18, and Admissions #17, and on other Interrogatories and

Admissions, he didn't object to said words. See, Interrogatory #21, and Admissions #2, 3, and 10.

**NANCEY ZIMMER, RN**

**1).**     Interrogatory #10: Do the inmates you meet with during the medical purposes at the

Downtown Detention Center have control over what you write in their medical charts and/or file?

**RESPONSE:** No, but the medical chart typically contains information regarding signs and

symptoms obtained from Nurse Zimmer's observations of the patient, his or her self-reports, and

sometimes the reports of others. This is the commonplace method of medical charting used across

different institutions and practices, regardless of whether Nurse Zimmer is involved or not.

Nurse Zimmer states that this is the commonplace method of medical charting used across

different institutions and practices, regardless of whether Nurse Zimmer is involved or not.

Plaintiff's medical file dated August 27, 2014(DH_0074 – DH_0075),(Exhibit A) is very

detailed to include **Date Of Service, Primary Care Physician, Chief Complaint, History of**

**Present Illness, Past Medical History, Past Surgical History, Medications, Allergies, Family History, Social History, Review of Systems, Physical Examination, X-Rays, Assessment, and Plan**. This shows that Nurse Zimmer's Practice and Custom is not the commonplace method of medical charting used across different institutions and practices. Nurse Zimmer also stated that she base her reports based off her observations of the patients. However, when a inmate meets with Nurse Zimmer, they are seated in a chair right next to the door, and sometimes she don't see you walk in and take that seat due to the fact that she be on the computer.

The Plaintiff does not have authority of what is written in his file by Nurse Zimmer or "any" doctor or nurse. With this admission from Nurse Zimmer, the fact of the matter is that Nurse. Zimmer can't prove beyond a reasonable doubt, that Plaintiff did not report being in tremendous pain without a walking device and having stability issues. As will be shown throughout this Sworn Affidavit and Declaration, Nurse Zimmer's actions or lack thereof, will show how she was deliberate indifferent towards Plaintiff's serious medical need and that Defendant was aware of Plaintiff's serious medical need and of Plaintiff's chronic hip pain and substantial pain and that the Defendant failed to respond to and/or delayed Plaintiff receiving adequate medical treatment in violation of the14[th] Amendment, leaving Plaintiff to suffer the unnecessary and wanton infliction of pain and was deliberately indifferent to those actions causing Plaintiff's physical and psychological injuries of depression. The physical injury was that plaintiff's hip gave out causing him to fall and cause further injury to his left hip, groin and lower back. Plaintiff's physical injury is that since that fall, he can no longer put his left sock and shoe on, or tie the laces, as Plaintiff used to be able to do that even though it was difficult. Under the Eight Amendment, Plaintiff is entitled to medical care for serious medical needs. **Estelle v. Gamble,** 429 U.S. 97 (1976). Also, since inmates, including Plaintiff, don't have control over what Nurse Zimmer may or may not write in their medical charts and/or file, there is no way that Nurse Zimmer can state that Plaintiff never informed Nurse Zimmer of his issues.

**2).**    Interrogatory #11:  Have you ever not put all of an inmates medical and/or mental health

issues in his/her medical file/chart?

**RESPONSE:** Yes, and common reasons for that are that the reported medical and/or mental health issue is not relevant to intake screening and is not responsive to the intake questionnaire, Nurse Zimmer does not typically handle mental health care in her practice, sometimes the information is already included in another part of the chart or in a different chart, and sometimes Nurse Zimmer is not aware of a medical or mental health issue for some reason.

Nurse Zimmer stated in her response to the above mentioned Interrogatory, that mental health issues is not relevant to intake screening and is not responsive to the intake questionnaire. The Health Service Questionnaire (**See Exhibit D**) that Nurse Zimmer completed on Plaintiff on 10/9/2014, **Section 4**. Prescription medication including psychiatric? Gabapentin, Warfarin, Bupropion. (Jail_0022), **Section 10**. Mental Health Complaints: Yes. Depression. **Section 13**. Have you ever seen a Mental Health Professional including psychiatric hospitalizations and outpatient treatment? Denied. (Jail_0023), **Section 16**.(a) Depression, asthma, chronic DVT's. Med Verification sheet done. (Jail_0024). This Questionnaire show that Nurse Zimmer does handle mental health issues and that it is part of the intake screening process. Also, the fact that Nurse Zimmer marked "Denied" on question 13 as to Plaintiff seeing a mental health professional and outpatient treatment, also shows that Plaintiff don't have control over what is placed in his file and that Nurse Zimmer will lie in completing these reports and questionnaires, because Plaintiff was on psych medication and seeing an outpatient mental health professional through DHMC at the West side Clinic. This same questionnaire also shows that on the prescription medication, Plaintiff was taking Bupropion which is used for anxiety. Also, with Nurse Zimmer not putting all of an inmates medical issues in their file, she cannot state with clarity that Plaintiff did not inform her of his physical issues of needing a cane/walker, tremendous pain and stability issues. Also, **Section 10** of this questionnaire states: Plaintiff has Depression. Also, since Nurse Zimmer's admission of not putting all of an inmates medical information in their file, then that renders the medical charts that she completed, as irrelevant due to the fact that they are not complete by her own admissions.

3).    Interrogatory #12: Have you ever made any mistakes when it comes to medical information you may of added or not added to an inmates medical file/chart?

RESPONSE: No, Nurse Zimmer has no specific recollection of making a mistake regarding medical information added or not added to an inmate's medical chart during her career.

Nurse Zimmer admits that she don't make mistakes, then that shows that the information she adds or don't add is deliberate, as was shown by Plaintiff on the Intake Questionnaire above. Plaintiff clearly disputed that fact and shown Nurse Zimmer's practices and customs in how she does or does not do her job.

4).    Interrogatory #17: Did the Plaintiff ever tell you that he is disabled, in tremendous pain and in need of a cane and/or walker on October 9, 2014.

RESPONSE: Based on the Health Service Questionnaire completed by Nurse Zimmer for the Plaintiff on October 9, 2014 (Jail_0022 – Jail_0024), (See Exhibit D) Plaintiff did not report to Nurse Zimmer that he was disabled, in tremendous pain, or in need of a cane and/or walker.

Once again, Defendant placed her responses on the same Health Service Questionnaire disputed above showing Defendant did not question and/or mark Plaintiff had physical and Mental Health issues.  Plaintiff states that he has no authority as to what Nurse Zimmer adds or does not add to an inmates files. Also, since Nurse Zimmer don't make any mistakes by her or admissions, then she deliberately refused to add that information to Plaintiff's file. However, since Nurse Zimmer completed said questionnaire, and admitted to "that inmates not having control over what she writes in their medical chart/file" and her admission of "not putting all of an inmates medical and/or mental health issues in his/her medical file/chart", Nurse Zimmer cannot state beyond a reasonable doubt that Plaintiff did not report to Nurse Zimmer that he was disabled, in tremendous pain, or in need of a cane and/or walker on October 9, 2014. This shows that the Health Service Questionnaire is not valid.

5).    Interrogatory #19: Did Plaintiff's medication chart show that he was taking Gabapentin as a pain medication?

**RESPONSE:** The Denver Sheriff Health Services Medical Verification for Plaintiff (Jail_0026 – Jail_0027), dated 10/9/14 does list Gabapentin and includes the note "pain," but it does not specify and is not indicative of the reason Gabapentin was originally prescribed. A Discharge Medication List from Denver Health Medical Center dated 11/19/2012 states that it was prescribed for "pain due to past DVT'S" (DH-333).

Nurse Zimmer is the person that completed the above referenced Denver Sheriff Health Services Medication Verification for Plaintiff (Jail_0026 – Jail_0027), dated 10/9/14,**(See Exhibit E)** and Nurse Zimmer is the person that made the note, "pain." It is Nurse Zimmer's duty to verify why Plaintiff is on Gabapentin, or any medication and if the prescription is still active, and if so, then make order for Plaintiff to obtain at med line. Since it is shown that Nurse Zimmer completed said form, shows she was aware of Plaintiff's serious medical need as well as his tremendous and chronic hip pain. Nurse Zimmer did order Plaintiff's Gabapentin for med line, so that shows she did verify it before placing said order, and if she didn't, then she violated the law and the Rules and Policies of the Organization she works for. Also, in Nurse Zimmer's Admissions #2, she admits that she reviewed Plaintiff's medications on October 9, 2014.

6).    Admissions #3: Admit you verified Plaintiff was prescribed Gabapentin for pain.

**RESPONSE:** Deny.

In Interrogatory #19, Nurse Zimmer admitted based on the Denver Sheriff Health Services Medication Verification for Plaintiff (Jail_0026 – Jail_0027), dated 10/9/14 does list Gabapentin and includes the note "pain". This form was completed by Nurse Zimmer. **(See Exhibit E)**

7).    Admissions #4: Admit that Plaintiff told you he is disabled, had stability issues, and in tremendous pain.

**RESPONSE:** Based no medical chart, deny.

It has been disputed completely and successfully and admitted to by Nurse Zimmer that she don't put all of an inmates information in his/her medical file/chart and that inmates don't have control over what Nurse Zimmer may or may not add to an inmates medical file/chart, thus Nurse

Zimmer's denial based on the medical file/chart are not relevant, conclusive, or complete and cannot be used to dispute any genuine issues of a material fact, and/or used to state what Plaintiff did and did not inform her of based on the fact that the medical charts are miss-leading and untrue and not complete.

8).    Admissions #6 and #7 Admit that you told Plaintiff you don't have time to verify his cane and/or walker need because you had 40 other inmates to deal with. Admit that you told Plaintiff to deal with that issue of obtaining a cane or walker once he got upstairs.

**RESPONSE:**Nurse Zimmer lacks recollection, knowledge or information necessary to admit or deny this request. Nurse Zimmer has made reasonable inquiry and the information she knows or can readily obtain is insufficient to enable her to admit or deny.

On Nurse Zimmer's Admissions # 4 and #5 she based her responses based off the medical chart, when Plaintiff requested that she, "Admit that plaintiff told you he is disabled, had stability issues, and in tremendous pain," and "Admit that Plaintiff told you he needed a cane and/or walker to get around due to his disability," but now she lacks recollection, knowledge or information to admit or deny these request, but the said medical chart she makes reference to throughout these Interrogatories and Admissions, lacks knowledge or information necessary to admit or deny many different request. Nurse Zimmer admits in Admission #5 that Plaintiff never told her he needed a cane and/or walker to get around, but don't have the knowledge or information necessary to admit or deny if she told Plaintiff she don't have time to verify his cane and/or walker need. If Nurse Zimmer states that Plaintiff never told her he is disabled, had stability issues and in tremendous pain or that he needed a cane and/or walker to get around due to his disability, then it should be easy for her to state if she told Plaintiff she don't have time to verify his cane and/or walker use because he never told her these things. Thus, Plaintiff told Nurse Zimmer these things and Nurse Zimmer denied these things based on the medical chart, and Nurse Zimmer could admit or deny the other Admissions based on the medical chart due to the fact that they go hand in hand together.

9).    Admissions #8: Admit that Plaintiff filed a grievance on you for refusing to deal with his

medical issues appropriately on October 10, 2014.

      **RESPONSE:** Deny.

      Plaintiff filed a Denver Sheriff Department Inmate Grievance form #14 12837, Date

Submitted 10-10-14, (**Exhibit F**) in regards to Nurse Zimmer refusal to deal with Plaintiff's serious

medical needs.

**10).**    Admissions #14: Admit that if a medical personnel refuses to deal with a patients medical

issues in accordance to law, they can be held accountable for that refusal and that medical issue

will not be dealt with due to his/her incarceration.

      **RESPONSE:** Nurse Zimmer admits that if a medical provider refuses to deal with an

inmate's serious medical need, that medical provider can be held accountable under the law under

certain circumstances that do not apply to this case. Nurse Zimmer denies the remainder of the

request because one medical provider's refusal to deal with an inmate's medical need will not

necessarily lead to the need going unaddressed, as other individual's or the patient himself may be

able to address the need.

      Nurse Zimmer is not a lawyer, thus she cannot state that Plaintiff's allegations apply to this

so called law or not since that law has not been identified by Defendant. That is something for the

courts and/or jury to determine.

      However, the Court in **Hare v. City of Corinth**, 74 F.3d 633, states in part; "whether the

State's obligation is cast in terms of a duty to provide medical care or protection from harm, its

ultimate **Constitutional duty** is to "to assume some responsibility for [the] safety and general well

being" of persons whose State occasioned confinement renders them unable to fend for

themselves."

      Nurse Zimmer stated that "the patient himself may be able to address the need himself." It

is ludicrous for Nurse Zimmer to state that a incarcerated inmate can obtain a cane or walker or any

type of medical care himself, when they are the one's responsible for providing medical care and

treatment to the inmate population. In **DeShaney,** 489 U.S. at 200, the Court ruled in part; "The

underlying purpose of requiring a State Jail Official to provide medical care to a pretrial detainee is

to prevent the detainee from suffering further physical harm. The State's responsibility... springs

from the <u>fact</u> of incarceration and the resulting obligation to provide for the detainee's <u>basic human</u>

<u>needs</u>, which include **adequate medical care.** (explaining that State's affirmative restraint of

individual's liberty gives rise to duty to provide for his "basic human needs," "including" medical

care and reasonable safety).

11).    Admissions #15: Admit that Osteoarthritis is a serious medical need mandating treatment

by a physician.

**RESPONSE:** Nurse Zimmer admits that osteoarthritis can lead to a serious medical need,

depending on the circumstances.

This response shows that Nurse Zimmer is aware of what constitutes a serious medical need

and that a serious medical need mandating treatment by a Physician cannot go unaddressed or be

denied or delayed by a medical personnel. In **Johnson-El v. Schoemehl**, 878 F.2d 1043, 1055(8th

Cir.1989), the existence of chronic and substantial pain itself demonstrates a "serious medical

need." In **Velez v. Johnson,** 395 F.3d 732, 736 (7th Cir. 2005) A Defendant need not know the

precise nature of the risk to be found deliberately indifferent, as long as he/she knows that a serious

risk exist. Nurse Zimmer knew that Plaintiff had a serious medical need that mandated treatment by

a physician, and the treatment that was mandated included a walker and a cane and a total left hip

arthroplasty. **(See Exhibit A).** Nurse Zimmer also knew that Plaintiff faced a greater risk of falling

without a cane or walker than he did if he had a cane or walker.

Plaintiff through his Sworn Affidavit and Declaration, has shown that the Defendant's

possessed a "sufficiently culpable state of mind" to have inflicted cruel and unusual punishment.

Plaintiff has shown that he may prevail on this component by showing that the Defendant's knew

he faced a substantial risk and disregarded that risk by failing to take measures to abate it. The

Supreme Court in **Farmer,** analogized this standard to criminal recklessness, which makes a

person liable when she consciously disregards a substantial risk of serious harm. **Id at 836-38.**

Thus, Deliberate Indifference does not require a finding of express intent to harm. Plaintiff has shown this court that the Defendant's were aware of Plaintiff's serious medical need, and that serious medical need was diagnosed by a physician and that diagnoses mandated treatment by a cane and/or walker in the right hand and a total left hip arthroplasty when the Defendant's reviewed Plaintiff's medical record dated August 27, 2014 (**Exhibit A., DH_0075, PLAN:**). Through Defendant's admissions and Interrogatories, this shows that Defendant's were aware of the serious harm that could befall the Plaintiff by their failure to act and/or delay treatment for Plaintiff.

An inmate, "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;" it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. **Farmer**, 511 U.S. At 842(emphasis added). An official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences or risk that he strongly suspected to exist." **Id. At 843 n.8.** Significantly, this level of intent can be demonstrated through **[**12]** circumstantial evidence: A prison official cannot be liable "unless the Official knows of and disregards an excessive risk to inmate health and safety. The Defendant's had knowledge of Plaintiff's serious medical need and that he faced an excessive risk to his health when they viewed Plaintiff's medical chart of 8/27/14.

Based on Defendant's Interrogatories and Admissions, Defendant's have asserted knowledge that Plaintiff is disabled, reported both tremendous and chronic hip pain, and Dr. Stob through reviewing Plaintiff's medical records seen that there is a serious medical need of Osteoarthritis also known as "Left hip Degenerative Joint Disease (**Exhibit A, Assessment: DH-0075)** and this serious medical need mandated treatment by Dr. Nathan Cafferky by educating Plaintiff that a walker and cane in his right hand would be beneficial to assist with stability and hip pain. (DH_0075). Both Defendant's reviewed Plaintiff's medical chart and admits knowledge based on file in Plaintiff's medical chart dated August 27, 2014(**Exhibit A, DH_0074-DH_0075**), which gives a treatment plan, which mentions, "**a walker and cane in his right hand, educating**

**Plaintiff on surgical treatment plan for his left hip, risk and benefits of the surgery, and**

**completing the preoperative assessment."** Thus, Defendant's knew of Plaintiff's serious medical

need and that serious medical need was diagnosed by a physician mandating treatment, Plaintiff's

unbearable pain, using a cane and/or walker to ambulate. The Defendant's delay in treating

Plaintiff's serious medical need constitutes Deliberate Indifference based on Defendant's failure to

fulfill their gatekeeper's role. A prison medical professional who serves "solely... as a gatekeeper

for other medical personnel capable of treating the condition" may be held liable under the

deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role." **Sealock,**

**218 F.3d at 1211;** see also **Estelle, 429 U.S. At 104-105** (deliberate indifference is manifested by

prison personnel in intentionally denying or delaying access to medical care"). In **Westlake v.**

**Lucas,** 537 F.2d 857 (6th Cir.1976), the court held that a prisoner who is needlessly allowed to

suffer pain when relief is readily available does have a cause of action against those who Deliberate

Indifference is the cause of his suffering. **Benson** defined recklessness as **"disregarding a**

**substantial risk of danger that is either known or would be apparent to a reasonable person"**

in Defendant's position. **Benson v. Cady,** 761 F.2d 335(7th Cir.1985). Plaintiff was forced to

needlessly suffer the unnecessary and wanton infliction of pain by Defendant's based on the facts

that they refused to obtain a cane and/or walker for him even after the Defendant's reviewed

Plaintiff's medical file and seen that he had a serious medical need that was diagnosed by a

physician and that mandated treatment, and what that treatment entailed, which was a cane and/or a

walker and a total left hip surgery. Defendant's verified that Plaintiff faced a greater risk of falling

and injuring himself without a cane or walker than if Plaintiff had a cane or walker and chose to

recklessly deny and delay obtaining a cane or walker for Plaintiff. Recklessness is characterized by

highly unreasonable conduct or a gross departure from the ordinary care in a situation where a high

degree of danger is apparent.

     Plaintiff has proven that the medical record evidence does demonstrate that Defendant's

knew of Plaintiff's serious medical need, and that Defendant's failed to act accordingly to Plaintiff's

serious medical need by denying and delaying Plaintiff treatment according to law. Plaintiff has also proven through the medical record that the Defendant's were aware of the law of refusing to deal with Plaintiff's serious medical need appropriately.

Plaintiff is not disputing whatever treatment may or may not been provided after Plaintiff fell. Plaintiff is only disputing the actions and/or lack thereof that took place from October 9, 2014 throughout October 11, 2014, which shows that Defendant's denied Plaintiff the minimal civilized measure of life's necessities of adequate medical care. Plaintiff has also shown through the above mentioned evidence through his medical records from DHMC that Defendant's were aware of Plaintiff's serious medical need and consciously disregarded it by not providing adequate treatment once they became aware of the serious medical need and treatment that was provided by the physicians at DHMC. Plaintiff has more than a mere disagreement with the medical decisions made by Dr. Stob and the nursing care provided by Nurse Zimmer, based on the facts that through their admissions on their Interrogatories and Admissions, they both were aware that Plaintiff suffered the unnecessary and wanton infliction of pain without a cane or walker as was mandated by physicians at DHMC, which both Defendant's viewed, and their failure to act is a constitutional violation as Plaintiff has shown above. In a deliberate indifference [**6] case under the **Eighth Amendment**, we look at the factual record and the reasonable inferences to be drawn from the record in light most favorable to the non-moving party. **Sealock v. Colorado,** 218 F.3d 1205, 1209 (10th Cir. 2000). The Plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." Plaintiff has done that.

Therefore, Plaintiff through his Sworn Affidavit and Declaration, has establish and shown this Court that there exist a genuine dispute as to a material fact in accordance with Fed. R. Civ. P. 56 (c) Procedures. (1)(A), against the Defendant's and that their Motion for Summary judgment shall be denied based on the above disputed facts listed by Plaintiff, and this case be set for trial.

Respectfully presented,


George Moore #82658


## CERTIFICATE OF SERVICE

I hereby certify that a copy of this **SWORN AFFIDAVIT and DECLARATION OF GEORGE MOORE** was sent via U.S. Mail on the 27th day of September 2016, addressed to the following:


Office of the Clerk
U.S. District Court
Alfred A. Arraj Courthouse
901-19th St., RM A105
Denver, CO 80294-3589


Patrick A. Singer, #39738
5619 DTC Parkway #1200
Greenwood Village, CO 80111-3061


George Moore #82658

EXHIBIT A.

MOORE, GEORGE RAY 159543164 DH Orthopedics, O,     DOS: 8/27/2014 -     Ortho OP Encounter Record - 8/27/2014

Page 1 of 3

**Denver Health Medical Center**

DATE OF SERVICE: 08/27/2014

PRIMARY CARE PHYSICIAN: Dr. Eric Peterson

CHIEF COMPLAINT: Left hip pain.

HISTORY OF PRESENT ILLNESS: George Ray Moore is a 48-year-old gentleman who presents to the orthopedic joint clinic today with worsening left hip pain. The patient reports in 1984 was hit by a car a sustained bilateral femur fractures treated with intramedullary nailing at that time. He subsequently underwent bilateral femoral hardware removal in 1996. He says that overall he had done well until about 1-1/2 ago when he developed worsening onset of pain in his left hip. He says the pain has become unbearable. He says that the pain is located in the groin, worse with activity, improved with rest. He says that he has pain and stiffness in the morning when he tries to get up out of bed and then also has worsening pain throughout the day. He does have a history of chronic blood clots. He was just on Coumadin so he cannot take aspirin or Aleve. He says that Tylenol, which he has tried in the past, has also caused upset stomach so he cannot take that either. He states the only that seems to help minimize the pain is activity modifications and attempt at weight loss and diet control. However, this is difficult because of his psychiatric disorder with depression. He is also using a walker and a cane, and he says that his current hip pain is limiting his ability to enjoy his usual activities. He says it is even difficult for him to put on his pants and shoes in the morning. He says he is very frustrated with his current hip pain and discomfort, and he is very interested in pursuing treatment options that might alleviate some of his overall pain and allow him to have improvement in his functional status. He does report some mild tingling in his left lower extremity but he denies any radiculopathy. He denies any history of diabetes. Pain is 10/10 today.

PAST MEDICAL HISTORY:

1. COPD.
2. Chronic blood clots on Coumadin.
3. GERD.

PAST SURGICAL HISTORY:

1. Intramedullary nailing of bilateral femur fractures in 1984.
2. Bilateral femoral hardware removal in 1996.
3. Cholecystectomy in 2012.

MEDICATIONS:

1. Coumadin 1.5 mg tabs on Sundays and Wednesdays.
2. Gabapentin 600 mg t.i.d.
3. ProAir inhaler.
4. Wellbutrin 150 mg b.i.d.

ALLERGIES: The patient reports Tylenol gives him an upset stomach but denies any other known drug allergies.

FAMILY HISTORY: Positive for blood clot disorders.

SOCIAL HISTORY: The patient reports he smokes 5-6 cigarettes per day. He is currently living in a

| DICTATOR: | Nathan Cafferky | MOORE, GEORGE | |
|---|---|---|---|
| PHYSICIAN ID: | 182055 | MR#: | 238111 |
| ATTENDING: | | | |
| ATTENDING ID: | | HFC#: | 159543164 |

**ORTHOPEDIC OUTPATIENT ENCOUNTER**

DH _0074

Exhibit A

MOORE, GEORGE RAY 159543164 DH Orthopedics, O,    DOS: 8/27/2014 -  Ortho OP Encounter Record - 8/27/2014

Page 2 of 3
**Denver Health Medical Center**

half-way house, was previously incarcerated. He is using a cane and/or walker to ambulate.

REVIEW OF SYSTEMS: Positive for left hip pain; positive for COPD, positive for chronic blood clots on Coumadin; positive for depression. All other review of systems are negative except what was mentioned in HPI.

PHYSICAL EXAMINATION:  GENERAL:  The patient is a wake, alert, and cooperative with examination, overweight appearing, middle-aged male smells of cigarette smoke.  HEENT:  Normocephalic, atraumatic. CARDIOVASCULAR:  Pulses are 2+ and regular.  He has 2+ dorsalis pedis and posterior tibial pulse in the left lower extremity.  LUNGS:  Good respiratory  effort.  Unlabored breathing.  ABDOMEN:  Obese but soft, nontender.  MUSCULOSKELETAL:  Left lower extremity shows tenderness with palpation around the left hip and mostly around the anterior groin.  He has mild tenderness to palpation around the greater troch and minimal tenderness to palpation around the sciatic notch.  He has pain with attempted range of motion in left hip.  He has flexion of the hip to 80 degrees, external rotation to 30 degrees, internal rotation to neutral.  He has 5/5 strength in his quads and hamstrings.  He has 5/5 strength in his dorsiflexion and plantar flexion, EHL, FHL, a sensation to light touch in the sural saphenous superficial peroneal, deep peroneal, and tibial nerve distributions.  He has brisk capillary refill less than 2 seconds. SPINE:  He has minimal tenderness to palpation around the lumbosacral spine.  SKIN:  He does have some hemosiderin deposition around the medial side of his ankle joint but no rash, erythema or breakdown appreciated.

X-RAYS:  X-ray of the patient's left hip which included AP and lateral views of the left hip joint shows posttraumatic changes to the left hip.  He has subchondral sclerosis with cyst formation both on the acetabular and femoral head of left hip joint. He also has periarticular osteophyte formation. He also has joint space narrowing around both the superior and medial aspect of the left hip joint. He also has some heterotopic ossification around the left hip joint as well.

ASSESSMENT:  George Moore, a 48-year-old gentleman with left hip degenerative joint disease, posttraumatic left hip degenerative joint disease. Also, has a history of chronic obstructive pulmonary disease and chronic blood clots on Coumadin.  He is currently neurovascularly intact.

PLAN:  At this time, George was educated on overall findings and educated him on possibilities for treatment for his left hip pain. educated him that nonoperative treatment for this would consist of continued activity modifications and weight loss and diet control.  I also educated him that for pain control recommend Tylenol for arthritis.  I know that this causes him some acid reflux but he may benefit from taking some ranitidine or some other type of antireflux medication to allow him to take Tylenol for arthritis.  I also educated the patient that we do not recommend narcotics at this time. I also educated the patient that a walker and a cane in his right hand would be beneficial. At this time, the patient says that he is very frustrated with his current hip status and he is interested in pursuing operative intervention. At this time, I educated him on the surgical treatment plan for his left hip. It would consist of a left hip total arthroplasty. I educated him on the risks and benefits of the surgery.  The patient does have some concerning social situations to living in a half-way house and I recommend that prior to undergoing any type of surgical intervention, he should try to I improve his social situation.  However, the patient voices understanding.  He said he is trying to get out of the half-way house in the next month or so.  He is hoping to undergo surgery by October if it can be performed.  At this time, we will complete the preoperative assessment today for a left total hip arthroplasty. We also recommend that he be seen by our hospitalist service prior to surgical intervention to help medically optimize the patient and also assist with bringing the patient of his Coumadin during his preoperative period.  At this time, we will plan on seeing the patient back for our joints class and his preoperative evaluation.   The patient voiced understanding of the plan.

| DICTATOR: | Nathan Cafferky | MOORE, GEORGE | |
|---|---|---|---|
| PHYSICIAN ID: | 182055 | MR#: | 238111 |
| ATTENDING: | | | |
| ATTENDING ID: | | HFC#: | 159543164 |

ORTHOPEDIC OUTPATIENT ENCOUNTER

DH_0075

Exhibit B

BII# 2014-192730
14 12834
m/B.

# DENVER SHERIFF DEPARTMENT
## INMATE GRIEVANCE FORM
(Formulario de queja)

NAME: George Moore    CD#: 700141659    LOCATION: 3F COJL
(Nombre)    CD# 351769    3F—188  15 L

DATE AND TIME OF INCIDENT: 10-11-14  08:0    28 A  115 L
(Fecha y hora Del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: Got up from bed
(Decleracion detallando el acto o condicion que da lugar a la queja) to use bathroom. When finished I was walking to cell
door when trip gave out and I collapsed to the floor,
I had been trying to get a cane or walker since I got
here on 10-9-14. Seen Dr. Stab on 10-10-14 and he verified
that I'm supposed to have a cane or walker but
as of 10-11-14 0800 I still don't have either

SPECIFIC REMEDY SOUGHT: To speak with a supervisor of this institution
(Remedio especifico Del Oficial) and I am seeking legal action and monetary damages.

SUPERVISORS / OFFICERS ANSWER: 10/16/14 - Met with Mr. Moore today
(Supervisores / la respuesta Del Oficial) has a cane - prefers cane over walker. Would also like to
see Dr. Stb again regarding medication. Follow-up
appt already scheduled.)

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si se require mas espacio, papel adicional se puede utilizar)

DATE SUBMITTED: 10-11-14    INMATE'S SIGNATURE: _____
(Fecha de envio)    (Firma de recluso)

RECEIVED BY: Dr. Macs    0208
(Recibio por)    Print Name    Badge #    DATE RECEIVED: _____
(Fecha recibida)

ASSIGNED TO: Medical
(Asignado a)    MED-PRSN (Access to Cane)    DATE: 10.13.2014
(Fecha)

DSD 2013    COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE'S WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Exhibit C

MOORE, GEORGE RAY 158465625 Park Hill Adult, O,    DOS: 7/14/2014 –   Clinic Note – 7/14/2014

Page 1 of 1

**Denver Health Medical Center**

DATE OF SERVICE:=07/14/2014

SUBJECTIVE: The patient has arthritis to his left hip and knee.  He is here because he had been seen at West Side and was not given opiate medication for this.  He feels that Tylenol upsets his stomach and so does not want medications with Tylenol in them and Dr. Apple was not able to help him with this request.  He states he continues have severe pain in his hip and knee.  He states that he cannot use Tylenol because it bothers his stomach and cannot use NSAIDs because he is on warfarin and cannot use tramadol because it makes him shaky.

He has a history of COPD and wonders if he needs oxygen.

He also wants to quit smoking.

OBJECTIVE:  This is a pleasant and thoughtful man in no acute distress.  VITAL SIGNS:  His blood pressure is 130/91.  Pulse is 80.  CARDIOVASCULAR:  Regular rate and rhythm without murmur.  CHEST: Clear to auscultation bilaterally.  O2 saturation is 94% on room air.

ASSESSMENT AND PLAN:

1.  Chronic pain to the left hip and knee.  Unfortunately, the patient has contraindications to most therapies for this problem.  As he is on warfarin, he should not take NSAIDs.  The Tylenol and the tramadol cause him side effects.  The patient has multiple contraindications to opiates as well.  He has been denied opiates by his previous doctor at West Side.  He also has a history of recent cocaine use by his own admission.  He is young, the problem is arthritis which is not likely to get better, and he has a history of jail time and mental illness.
So to try to help him I have written an e-mail to Dr. Hammerberg in an attempt to move up his evaluation for joint replacement.
2.  COPD.  This is just per the patient's report.  A form to get PFTs done is faxed to main campus for evaluation.  The patient understands he is to contact us if he has not heard back in 2 weeks.
3.  Tobacco abuse.  The patient is referred to the tobacco clinic.
4.  Mental health.  The patient is followed by West Side Adult for recurrent major depressive disorder and anxiety disorder.  It is noted that the patient has some cluster B traits with antisocial features.
5.  Patient is listed as being prediabetic.
6.  History of DVT.  The patient is on warfarin and hooked up with the anticoagulation clinic.

PBTY/98721510/00551982
D:      07/14/2014 14:36      T:      07/14/2014 19:31

Electronically Signed By PETERSON, ERIC on  17-Jul-2014 08:33:47 -06:00

| DICTATOR: | Eric Peterson | MOORE, GEORGE | |
|---|---|---|---|
| PHYSICIAN ID: | 163329 | MR#: | 0238111 |
| ATTENDING: | | | |
| ATTENDING ID: | | HFC#: | 158465625 |

**CLINIC NOTE**

DH—0109



# DENVER SHERIFF DEPARTMENT
## Health Services Questionnaire

**Name:** Moore, George    **D.O.B:** 08/13/1966    **Gender:** Male

**CD #:** T000142659    **BI #:** 2014-192730    **Date/Time:** 10/9/2014 20:08

| | | | |
|---|---|---|---|
| **1. Do you have any medical problems, recent surgeries, injuries or intellectual disability?** | ☐ Diabetes: BS___ <br> ☐ Hypertension: BP_____ <br> ☐ Hepatitis: Type: _____ <br> ☐ Tuberculosis | ☐ Cardiac <br> ☐ Seizures <br> ☒ Asthma <br> ☐ HIV | ☐ Special Education <br> ☐ Learning Disability <br> ☐ Developmental Disability <br> ☐ Hx Traumatic Brain Injury <br> ☐ Other: chronic DVT | ☐ Denies |
| **2. Do you have symptoms or a history of treatment for any serious infection or communicable diseases?** | ☐ Yes: _____ | | | ☒ Denies |
| **3. Do you have any allergies?** | ☒ Yes: TYlenol | | | ☐ NKA |
| **4. Do you take any prescription medication, including any psychiatric medication?** | ☒ Yes: gabapentin, warfarin bupropion, , <br> Pharmacy: DHHA <br> Date last used: am | | | ☐ Denies |
| **5. Do you have any dental problems?** <br><br> Results of visual inspection of mouth. | ☐ Yes: _____ <br> ☒ Missing teeth <br> ☐ Abscess | ☐ Cavities <br> ☐ Gum Disease <br> ☐ Other: | | ☐ Within normal limits |
| **6. Do you have problems with mobility or use artificial devices?** | ☐ Dentures <br> ☐ Prosthetic limb <br> ☐ Wheelchair <br> ☐ Crutches | ☒ Glasses <br> ☐ Contacts <br> ☐ Gait abnormality <br> ☐ Other: _____ | | ☐ Denies |
| **7. Could you be pregnant?** | ☐ Yes: _____ <br><br> Last Menstrual Period: _____ <br><br> Due date: _____ <br><br> Doctor: _____ | Gravida: ___ <br><br> Para: ___ <br><br> Spontaneous Abortion: ___ | | ☐ Denies <br> ☒ N/A |
| **8. Are there any abnormalities with patient's general appearance or behavior?** | ☐ Sweating <br> ☐ Tremors <br> ☐ Jaundice <br> ☐ Lethargic <br> ☐ Body Deformities <br> ☐ Rashes <br> ☐ Lesions <br> ☐ Infestations <br> ☐ Persistent Cough <br> ☐ Hyperventilation | ☐ Overly Anxious <br> ☐ Afraid <br> ☐ Angry <br> ☐ Disorganized <br> ☐ Disheveled <br> ☐ Insensible <br> ☐ Distraught <br> ☐ Depressed <br> ☐ Disorientated <br> ☐ Hallucinations | ☐ Evidence of abuse or trauma <br> ☐ Evidence of self harm or suicide attempts <br> ☐ Evidence of intellectual disability. <br> ☐ Poor emotional response to incarceration | ☒ None |

JAIL-0022




# DENVER SHERIFF DEPARTMENT
## Health Services Questionnaire



| | | |
|---|---|---|
| 9. 1. Do you use or have you ever used street drugs or alcohol?<br>　　　a. Amount used?<br>　　　b. Last used?<br>　2. Does the patient appear to be in withdrawal? | ☐ 1. Yes: ☐ ETOH  ☐ Opiate  ☐ Benzodiazepine  ☐ Other: _____<br>　　　☐ a. Amount: _____<br>　　　☐ b. When: _____<br>☐ 2. Yes: (start withdrawal monitoring) _____ | ☒ Denies |
| 10. Do you have any mental health complaints or are you having difficulty dealing with your arrest? | ☒ Yes: depression | ☐ Denies |
| 11. Are you having any suicidal, self-harm, or violent thoughts now or have you during any past incarcerations?<br>　　　a. Do you have a plan? How? | ☐ Yes: _____<br>　　　☐ a. Yes: _____ | ☒ Denies |
| 12. Have you, a family member, or a close friend attempted suicide or intentionally harmed yourself/themself? How? When? | ☐ Yes: _____ | ☒ Denies |
| 13. Have you ever seen a mental health professional including psychiatric hospitalizations and outpatient treatment? Where and when? | ☐ Yes: _____ | ☒ Denies |
| 14. 1. Have you ever been sexually victimized while in custody?<br>　2. Do you have a history of sexually assaultive behaviors while in or out of custody?<br>　3. Do you feel that you may sexually assault anyone while in custody?<br>　4. Do you have a history of violent behavior?<br>　5. Do you have a history of being a victim while incarcerated? | ☐ 1. Yes: (If yes, refer to Psychology) _____<br><br>☐ 2. Yes: (If yes, refer to Psychology) _____<br><br>☐ 3. Yes: (If yes, refer to Psychology) _____<br><br>☐ 4. Yes: (If yes, refer to Psychology) _____<br><br>☐ 5. Yes: (If yes, refer to Psychology) _____ | ☒ Denies |
| 15. Hospital Returns only | ☐ Correctional Trauma Protocol<br>☐ Neuro checks initiated<br>**Report received from DHMC ED:**<br>　☐ Yes<br>　☐ No | ☐ Vital signs completed<br>　T: _____ BP: _____ P: ___ R: ___ O2 Sat: _____<br>☐ Return from ED due to sexual assault; referred to Psychology<br>☐ D/C instructions reviewed and copy given to patient. |

JAIL-0023



# DENVER SHERIFF DEPARTMENT
## Health Services Questionnaire



16. SOAPE Note:  S:  I have a hx of DVTs since 2000, my last one was in 2008.  I have been on Warfarin for 14 years.  I went to

the coag clinic 9/27 and they changed my doseage.

O;  no other concerns

a:  depression, asthma, chronic DVTs

p:   Coumadin assessment form done

med verification sheet done

change in coumadin doseage noted in coag clinic from 9/26, copy to chart

9/26  pt  16/7

INR  1.42

refer to mdl in am

housing card for lower bunk, duration.

treatment sheet for PT/INR in am

MDL in am

MAR made for currentl meds, copy to chart---------------Client states he is allergic to tylenol, he has had rx for Vicodin in MAY.   refer to MD

| 17. Medical/Mental Health disposition of patient: | |
|---|---|
| If the patient is suicidal, homicidal, hopeless or your clinical judgment dictates the patient needs a higher level of psychiatric care; refer the patient to mental health immediately and/or place in an Observation Cell. | ☒Patient is cleared for general population    ( ☒Bottom bunk restriction )<br>☐Patient is cleared for general population with referral to:<br>　☒MDL  ☐DDS  ☐Psychology  ☐Psychiatry ☐Medication Verification<br>　☐Other: _____<br>☐Patient referred to appropriate health care service for acute emergency<br>　treatment: _____<br>☐Patient housed in Observation Cell – Custody  Notified |

| Completed by: | ZIMMERN_RN | Date/Time: 10/9/2014 8:08:00 PM |
|---|---|---|

*10/10/14 ston*

*Jail-0024*

## Denver Sheriff Health Services
## Medication Verification
**\*one pharmacy per form \***

**MOORE, GEORGE**
**8/13/1966--351769**

**Medications Claimed:** _Coumadin_

**Drug Allergies:** _Tylenol_

Facility Name/ Phone Number _DHHA_                     □ ROI Sent □ Called

Signature: _Mummert_ Date: _10/9/14_ Time: _2003_ Stamp: _____

**Medications Verified:** ☒ LCR   □ Fax   □ Patient Supply   □ Phone- spoke with _____   □ Voicemail left
                          □ Chart                          Number of calls attempted                    Time

---

Name of Medication/ Sig
_Gabapentin 600mg Tid prn pain_

| # Dispensed _180_ | # Refills _9_ | Last Filled _9/26/14_ | ☒ Medical | □ Psych |

Action Taken
☒ MAR   □ Expired
□ Referred to MD- MD order _____
□ Substitute per Protocol with: _____

---

Name of Medication/ Sig
_Bupropion SR 150 one BID_

| # Dispensed _60_ | # Refills _3_ | Last Filled _9/12/14_ | □ Medical | ☒ Psych |

Action Taken
□ MAR   □ Expired
□ Referred to MD- MD order _____
□ Substitute per Protocol with: _____

---

Name of Medication/ Sig
_Ventolin 90mcg 2 puffs 86 prn SOB_

| # Dispensed _6_ | # Refills _6_ | Last Filled _5/2/14_ | ☒ Medical | □ Psych |

Action Taken
□ MAR   □ Expired
☒ Referred to MD- MD order _____
□ Substitute per Protocol with: _____

Signature: _Mummert_ Date: _10/9/14_ Time: _2025_ Stamp: _____

Page 1 of 2

Exhibit E

Name of Medication/ Sig

*Simvastatin 10mg po daily*

Pharmacy

| # Dispensed 30 | # Refills 11 | Last Filled 3/24/14 | ☑ Medical | ☐ Psych |

Action Taken
☐ MAR  ☐ Expired _____
☑ Referred to MD- MD order _____
☐ Substitute per Protocol with: _____

Name of Medication/ Sig

*Warfarin 5 10mg daily*

| # Dispensed 45 | # Refills 2 | Last Filled 9/24/14 | ☑ Medical | ☐ Psych |

Action Taken
☑ MAR  ☐ Expired  *Per coag clinic*
☐ Referred to MD- MD order _____
☐ Substitute per Protocol with: _____

Name of Medication/ Sig

_____

| # Dispensed | # Refills | Last Filled | ☐ Medical | ☐ Psych |

Action Taken
☐ MAR  ☐ Expired
☐ Referred to MD- MD order _____
☐ Substitute per Protocol with: _____

Name of Medication/ Sig

_____

| # Dispensed | # Refills | Last Filled | ☐ Medical | ☐ Psych |

Action Taken
☐ MAR  ☐ Expired
☐ Referred to MD- MD order _____
☐ Substitute per Protocol with: _____

Signature: _____  Date: _____  Time: _____  Stamp: _____

Revised 02/05/14

Page 2 of 2

*Jail-0027*

EXHIBIT F

BII # 204-192730

14 12837

MIB.

# DENVER SHERIFF DEPARTMENT
# INMATE GRIEVANCE FORM
(Formulario de queja)

Time stamp - Do not write in this area
OCT 16 '07:14

NAME: George Moore
(Nombre)

CD#: Tooo/42659    LOCATION: 2F COJL
(Ubicacion)
CD# 351769    SE-10-15-6
22A-115L

DATE AND TIME OF INCIDENT: 10-9-14-7:30pm
(Fecha y hora Del incidente)

STATEMENT DETAILING THE ACT OR CONDITION GIVING RISE TO THE GRIEVANCE: As I was being
(Declaración detallando el acto o condicion que da lugar a la queja)
processed thru intake I was seen by nurse Zimmer
in medical. I informed her that I'm disabled and
that I walk with a cane and/or walker. I told
her that I need the cane and she told me
that she had 40 other inmates to see and that
she don't have time to go thru my medical
records to see if I was issued a cane. I tried
to explain to Ms. Zimmer that I'm in tremendous
pain walking and getting up and down without
a cane and I have stability issues. She
refused to look into it and denied me medical
service. It is now 10-10-14 and time is 0910 and I
still don't have a cane or been seen by nobody
concerning this issue.

SPECIFIC REMEDY SOUGHT: That I be issued a cane immediately.
(Remedio especifico Del Oficial)
I am considering filing legal action as well for
denial of medical services as well as increased pain
I'm suffering without a cane.

SUPERVISORS / OFFICERS ANSWER: Did I/we met with
(Supervisores / la respuesta Del Oficial)
See grievance # 14-12834

10/22/14

(IF MORE SPACE IS REQUIRED, ADDITIONAL PAPER MAY BE USED)
(Si se require mas espacio, papel adicional se puede utilizar)

DATE SUBMITTED: 10-10-14    INMATE'S SIGNATURE: George Moore
(Fecha de envio)    (Firma de recluso)
RECEIVED BY: D/s Mars    07-48
(Recibio por)    Print Name    Badge #    DATE RECEIVED:
(Fecha recibida)
ASSIGNED TO: Medical
(Asignado a)    DATE: 10-13-2014
MED-PRSN (Access to Medical Device)    (Fecha)

DSD 2013    COPIES WHITE ( JAIL RECORDS ) CANARY ( INMATE WITH ANSWER ) PINK ( INMATE'S IMMEDIATE )

Name George Moore

Regist: 82858

Unit 3b

Box Number 6000

City, State, Zip Sterling CO
80751

Arraj United States Courthouse
901 19th Street, Room A-105
Denver , CO 80294-3589



Restricted Inspection Mail Stamp

FACILITY _SCF_

DATE REC'D _9-27-16_

DOC EMPLOYEE LAST NAME _Chavez_

ID# _16252_

INT _C_

DOC# _82656_

OFFENDER LAST NAME _Moore_

INT _RM_